UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ROBERT EUGENE CHERWINK,

        Plaintiff,

    v.

CAROLYN W. COLVIN,

        Defendant.

Case No.  13-cv-05147-JCS

**ORDER ON MOTIONS FOR SUMMARY JUDGMENT**

Re: Dkt. Nos. 16, 20

## I.   INTRODUCTION

Plaintiff Eugene Cherwink seeks review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for disability benefits under the Social Security Act.  Cherwink asks the Court to reverse the Commissioner's denial of benefits and remand with instructions to award benefits, or, in the alternative, for further administrative proceedings.  For the reasons stated below, the Court GRANTS IN PART Plaintiff's Motion for Summary Judgment and DENIES Defendant's Motion for Summary Judgment.

## II.   BACKGROUND

### A.   Procedural Background

Cherwink applied for disability benefits on January 19, 2011, alleging that he had been disabled since September 1, 2009 due to an anxiety disorder, depression disorder, alcoholism, disc injuries, arthritis, TMJ, chronic pain syndrome, and hypertension.  Administrative Record ("AR") at 101.  The Social Security Administration denied Cherwink's claim on June 11, 2011, and subsequently affirmed the denial on reconsideration.  Cherwink requested a hearing, adding no further claims of impairment.  See id. at 113.  Administrative Law Judge K. Kwon ("ALJ") held a hearing on October 12, 2012, and issued a decision on November 13, 2012 finding Cherwink not

1  disabled.  *Id.* at 17−42. The Social Security Administration Appeals Council denied Cherwink's

2  request for review on August 28, 2013, finding no reason to review the ALJ's decision.  *Id.* at 1−3.

3       Cherwink filed this action on November 4, 2013 under 42 U.S.C. § 405(g), which gives the

4  Court jurisdiction to review the final decision of the Commissioner.  The parties have filed cross

5  motions for summary judgment pursuant to Local Rule 16-5.  Dkts. 16, 20.  This action was

6  reassigned to the undersigned magistrate judge, and the parties have consented to the jurisdiction

7  of a United States magistrate judge pursuant to 28 U.S.C. § 636(c).

8       **B.**    **The Administrative Hearing**

9       Cherwink, his non-attorney representative, and a vocational expert appeared before the

10  ALJ on October 15, 2012.  AR at 47.  The ALJ confirmed that Cherwink's representative did not

11  have any objections to the evidence in the file and admitted the exhibits into the record.  *Id.* at 48.

12  The ALJ then questioned Cherwink about his home life and work history, including any physical

13  limitations he encountered.  *Id.* at 48–52.  The ALJ asked Cherwink about his injury history,

14  including ailments in Cherwink's right hand, neck, and back, and asked about how those injuries

15  impacted his work.  *Id.* at 52–54.  Cherwink testified that he "had a hard time keeping up with the

16  pace after [he] hurt his neck," and that he started self-medicating with alcohol in 2005.  *Id*

17       After hearing testimony from Cherwink, the ALJ questioned the vocational expert about

18  the availability of jobs Cherwink could perform, given his limitations, and the transferability of

19  Cherwink's skills from past work to those jobs.  AR at 76–82.  The vocational expert testified that

20  Cherwink's past work, as a graphic designer, was sedentary work with an "SVP" of 7, which is

21  considered "skilled."  *Id.* at 77–78.  The ALJ asked the vocational expert about jobs Cherwink

22  could perform, and the vocational expert testified regarding the positions of data-entry clerk and

23  telemarketer.  *Id.* at 79–81.  The ALJ turned to the issue of transferability of skills, leading to this

24  exchange:

25       Q: Whenever I talk about transferability, someone who's had a
         skilled job in the graphics . . . area, I would assume it would be
26       transferrable to a similar graphics department, right?

27       A: Right. Yeah. In regards to the graphic, that can be extremely
28       difficult to go down to a lower rate and still be a graphic designer,

United States District Court
Northern District of California

2

Your Honor, you know.

Q: Um-hum.

A: So as far as utilizing the graphic skills like styling or layout --

Q: Um-hum.

A: No, Your Honor. You're going to --

Q: They remain in the skilled?

A: Yes, that is correct.  Yes.

Q: Okay. So it's the computer application that's --

A: Exactly.

AR at 78–79.  The ALJ returned to the topic shortly thereafter, after asking about the specific

manipulative requirements of the job of data-entry clerk, leading to this exchange:

> Q: Is there any transferability using any of the skills acquired as a graphic designer to a job that is semiskilled and also is not more than frequent in terms of manipulative requirements?
>
> A: Your Honor, I'd have to say, no, not as a designer, no.
>
> Q: Um-hum. Um-hum.
>
> A: Because the design work now is so computerized.
>
> Q: Um-hum.
>
> A: It is. It's all these softwares for designers. In fact, Your Honor, and this is a non-DOT response to you.
>
> Q: Uh-huh.
>
> A: I have a very good friend who is a graphic designer and he did everything pretty much by hand and, Your Honor, he's become a dinosaur. He has been told, you need to go back to school and learn these softwares for computer design.
>
> Q: Um-hum, um-hum. But it would be at the frequent level.
>
> A: Yes, Your Honor. Yes, it would.

*Id.* at 80–81.

United States District Court
Northern District of California

C.    **The ALJ's Analysis and Findings of Fact**

1.    **Legal Standard for Determination of Disability**

a.    Five-Step Analysis

Disability insurance benefits are available under the Social Security Act when an eligible claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 423(a)(1).  A claimant is only found disabled if his physical or mental impairments are of such severity that he is not only unable to do his previous work but also "cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).  The claimant bears the burden of proof in establishing a disability.  *Gomez v. Chater*, 74 F.3d 967, 970 (9th Cir.), *cert. denied*, 519 U.S. 881 (1996).

The Commissioner has established a sequential five-part evaluation process to determine whether a claimant is disabled under the Social Security Act.  20 C.F.R. § 404.1520(a).  At Step One, the Commissioner considers whether the claimant is engaged in "substantial gainful activity."  20 C.F.R. § 404.1520(a)(4)(I).  If he is, the Commissioner finds that the claimant is not disabled, and the evaluation stops.  If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to Step Two and considers whether the claimant has "a severe medically determinable physical or mental impairment," or combination of such impairments, which meets the duration requirement in 20 C.F.R. § 404.1509.  An impairment is severe if it "significantly limits [the claimant's] physical or mental ability to do basic work activities."  20 C.F.R. § 404.1520(c).  If the claimant does not have a severe impairment, disability benefits are denied at this step.  If it is determined that one or more impairments are severe, the Commissioner will next perform Step Three of the analysis, comparing the medical severity of the claimant's impairments to a compiled listing of impairments that the Commissioner has found to be disabling.  20 C.F.R. § 404.1520(a)(4)(iii).  If one or a combination of the claimant's impairments meet or equal a listed impairment, the claimant is found to be disabled.  Otherwise, the

4

United States District Court
Northern District of California

1   Commissioner proceeds to Step Four and considers the claimant's residual functional capacity

2   ("RFC") in light of his impairments and whether he can perform past relevant work.  20 C.F.R. §

3   404.1520(a)(4)(iv); 20 C.F.R. § 404.1560(b) (defining past relevant work as "work . . . done

4   within the past 15 years, that was substantial gainful activity, and that lasted long enough for you

5   to learn to do it").  If the claimant can still perform past relevant work, he is found not to be

6   disabled.  If the claimant cannot perform past relevant work, the Commissioner proceeds to the

7   fifth and final step of the analysis.  20 C.F.R. § 404.1520(a)(4)(v).  At Step Five, the burden shifts

8   to the Commissioner to show that the claimant, in light of his impairments, age, education, and

9   work experience, can perform other jobs in the national economy.  *Johnson v. Chater*, 108 F.3d

10  178, 180 (9th Cir. 1997).  A claimant who is able to perform other jobs that are available in

11  significant numbers in the national economy is not considered disabled, and will not receive

12  disability benefits.  20 C.F.R. § 404.1520(f).  Conversely, where there are no jobs available in

13  significant numbers in the national economy that the claimant can perform, the claimant is found

14  to be disabled.  *Id.*

15          b.  Consideration of drug or alcohol abuse

16          The Commissioner must also consider whether drug or alcohol abuse is a contributing

17  factor to the determination that an individual is disabled.  A claimant will not be deemed

18  "disabled" if alcoholism is a "contributing factor material to the Commissioner's determination of

19  disability."  42 U.S.C. § 423(d)(2)(C).  "In making this determination, [the Commissioner] will

20  evaluate which of [the claimant's] current physical and mental limitations . . . would remain if [the

21  claimant] stopped using drugs or alcohol and then determine whether any or all of [the claimant's]

22  remaining limitations would be disabling."  20 C.F.R. §§ 404.1535(b)(2), 416.935(b)(2).  If the

23  Commissioner determines that the claimant's remaining limitations would not be disabling, then

24  the Commissioner must find that the claimant's drug addiction or alcoholism is a contributing

25  factor material to the determination of disability.  *See* 20 C.F.R. §§ 404.1535(b)(2)(i),

26  416.935(b)(2)(i). If the Commissioner determines that the claimant's remaining limitations are

27  disabling, then the Commissioner must find that the claimant is disabled, independent of his or her

28  drug addiction or alcoholism, and that the claimant's addiction or alcoholism is not a contributing

factor material to the determination of disability. *See* 20 C.F.R. §§ 404.1535(b)(2)(ii), 416.935(b)(2)(ii).

## III.   THE ALJ'S FIVE-STEP ANALYSIS

### A.   Step 1: Substantial Gainful Activity

The ALJ concluded that Cherwink "has not engaged in substantial gainful activity since September 1, 2009, the alleged onset date." *Id.* at 22.

### B.   Step 2: Severe Impairments

The ALJ determined that Cherwink "has the following severe impairments: alcoholism in self-reported remission; degenerative disc disease of the lumbar spine; depressive disorder; and an anxiety disorder." *Id.*

The ALJ determined that if Cherwink "stopped the substance abuse . . . [he] would continue to have a severe impairment or combination of impairments," including "lower back pain and neck pain," and "ongoing symptoms of depression and anxiety." *Id.* at 26.

### C.   Step 3: Medical Severity

The ALJ found that Cherwink "does not have an impairment or combination or impairments that meets or medically equals one of the listed impairments." *Id.* at 22.

The ALJ also found that if Cherwink "stopped the substance abuse, [he] would not have an impairment or combination or impairments that meets or medically equals one of the listed impairments." *Id.* at 26.

### D.   Step 4: Residual Functional Capacity

The ALJ concluded that "based on all the impairments, including the substance abuse disorder," Cherwink "has the residual functional capacity to perform light work . . . except the claimant cannot sustain eight-hour workday demands; he cannot handle normal work stress; and he cannot maintain concentration to perform even simple routine repetitive tasks." *Id.* at 24.  The ALJ further concluded that Cherwink was "unable to perform any past relevant work." *Id.* at 25.

The ALJ additionally concluded that "if [Cherwink] stopped the substance abuse, [he] would have the residual functional capacity to perform light work . . . except the claimant is limited to work involving no more than semi-skilled SVP (specific vocational preparation) 4

United States District Court
Northern District of California

6

United States District Court
Northern District of California

1  tasks." *Id.* at 28.

2  In reaching this conclusion, the ALJ considered Cherwink's testimony at the hearing,

3  written statements from Cherwink and his daughter, and Cherwink's medical and treatment

4  records.

5  The ALJ considered Cherwink's Function Report dated February 17, 2011, and

6  Cherwink's testimony at the hearing.  AR at 29.  The ALJ summarized Cherwink's self-reported

7  daily activities, which typically include "attending to his personal care, reading the newspaper,

8  attending a recovery meeting or meet[ing] with his Sponsor, eating his meals, napping, watching

9  television, stretching, meditating, and sleeping."  The ALJ noted that Cherwink reported some

10  limitations in attending to some aspects of daily life, including attending to his personal care,

11  needing reminders to take his medications, managing his finances.  He also continues to

12  experience ongoing neck and back pain.  The ALJ notes that Cherwink is "limited in his ability to

13  lift (fifteen to twenty pounds), walk (half mile), climb stairs, understand, squat, sit, follow

14  instructions, bend, kneel, recall information, use his hands, stand, talk, complete tasks, reach and

15  concentrate."  *Id.*

16  The ALJ also considered Cherwink's testimony regarding his alcohol use.  AR at 29–30.

17  Cherwink testified that from 2005 to 2009, he drank alcohol heavily, making it difficult for him to

18  function and show up for work in the morning.  *Id.* at 29.  His alcohol use also affected his

19  personal relationships.  *Id.*  Cherwink testified that stopped working on September 1, and he

20  entered treatment for alcohol dependence the next day.  *Id.*

21  The ALJ also considered a statement by Cherwink's daughter, Anya Rose Cherwink

22  ("Anya"), who lives with claimant Cherwink.  *Id.* at 30.  Anya testified that Cherwink "spends the

23  majority of his day napping or seated in his chair with a heated pillow" and "is limited in his

24  ability to attend to his personal care needs."   However, she also testified that Cherwink prepares

25  meals, cares for his bonsai tree, makes his bed, and does some chores and shopping.  *Id.*

26  Comparing Plaintiff Cherwink and his daughter's statements to the medical evidence, the

27  ALJ found that if Cherwink stopped the substance abuse, his "medically determinable

28  impairments could reasonably be expected to produce the alleged symptoms; however, the

1    claimant's statements concerning the intensity, persistence and limiting effects of these symptoms

2    are not credible to the extent they are inconsistent with the residual functional capacity assessment

3    . . . ." *Id.* at 30.  The ALJ noted "significant inconsistencies between the claimant's alleged

4    severity of his symptoms and limitations, and the evidence," which "shows that with treatment and

5    continued abstinence the claimant has reported and demonstrated significant improvement in his

6    overall health." *Id.*  The ALJ finds that the activities Cherwink regularly engages in "indicate that

7    [Cherwink's] symptoms are not as severe as alleged." *Id.*  The ALJ also concluded that treatment

8    (and abstinence from alcohol) has and could continue to result in significant improvement in

9    Cherwink's health.  *Id.* The ALJ notes that Cherwink's temporary increase in symptoms from "life

10   stressors" were "resolved" with mental health treatment, including "processing the situation . . .

11   and coping mechanisms."

12        Addressing Cherwink's physical complaints, the ALJ considered Cherwink's testimony at

13   the hearing and his daughter Anya's written statements.  *Id.* at 31.  The ALJ determined that

14   Cherwink received sporadic, conservative treatment for his reported pain, including prescription

15   pain medications that decreased over time and discontinued pain management treatment, and also

16   was encouraged by caregivers to become more physically active. *Id.* at 31.  The ALJ concluded

17   that Cherwink's symptoms may not have been as severe as alleged.  *Id.*

18        Regarding Cherwink's psychiatric health, the ALJ considered Cherwink's treatment

19   records, including that he sought out treatment in late 2009; was diagnosed with an anxiety

20   disorder, depressive disorder, and irritability; and was found to have a Global Assessment of

21   Functioning ("GAF") of 60 out of 100, the high end of a range indicating moderate difficulty in

22   social, occupational, or school functioning.  *Id.*  The ALJ also found that Cherwink demonstrated

23   improvement with his anxiety and depression in 2010, including regularly attending recovery

24   meetings and more active involvement at the Zen Center.  *Id.*  The ALJ noted that Cherwink

25   showed ongoing improvement in 2011, completing a newsletter for the Zen Center, and was more

26   connected to the organization.  *Id.*  However, he also reported increase in symptoms related to

27   stress from his pending Worker's Compensation and state disability claims.  He received increased

28   treatment and follow-up treatment, with reported improvement.  *Id.*

United States District Court
Northern District of California

1    Regarding Cherwink's claims of lower back and neck pains dating to the 1980s, the ALJ

2   considered Cherwink's MRI in 2006, subsequent injection treatment with reported relief, and pain

3   management treatment.  *Id.* at 32.  The ALJ considered Cherwink's statements, his MRI, his

4   Kaiser Santa Rosa office treatment and hospital records (AR 255–288), and his Kaiser Petaluma

5   office treatment records (AR 289–332) to note Cherwink's decreased pain, regular martial arts

6   practice, 5/5 strength results for upper and lower extremities, normal gait, and negative straight leg

7   raise test.  *Id.*  The ALJ notes that Cherwink requested to reduce his medications and was advised

8   to regularly exercise at the gym and to go on walks.  *Id.*  The ALJ notes that Cherwink has since

9   received follow-up care for his back, which showed improvement as of 2010—since 2009,

10   Cherwink required no increased treatment, further imaging, or specialists visits.  *Id.* (citing hearing

11   testimony).

12    The ALJ also considered the reports and treatment records of the following doctors:

13   • Dr. Alberto Lopez, M.D.  AR at 32–33.  Dr. Lopez was an examiner for Cherwink's

14    worker's Compensation claim, and performed several examinations of Cherwink.  Dr.

15    Lopez diagnosed Cherwink with anxiety disorder, depressive disorder, alcohol use in

16    remission, cannabis abuse and psychological factors affecting medical condition.  The

17    ALJ gave Dr. Lopez's report significant weight.  The ALJ considered that Dr. Lopez

18    gave Cherwink a GAF of 60, and found that he had improvement with his anxiety and

19    depression in 2010.  Dr. Lopez's report stated that Cherwink was not precluded from

20    work on psychiatric grounds.  The ALJ also noted that Dr. Lopez's report indicated

21    that Cherwink may have exaggerated some of his claims.

22   •  Jacklyn Chandler, Ph.D.  AR at 33.  Dr. Chandler performed a psychological mental

23    state evaluation on Cherwink at the Social Security Administration.  Dr. Chandler

24    diagnosed Cherwink with a pain disorder, depressive disorder, anxiety disorder, and

25    alcohol dependence in remission, and assigned him a GAF of 65.  Dr. Chandler also

26    determined Dr. Chandler had mild impairment in his ability to interact with the public,

27    with supervisors, and with coworkers.  The ALJ gave Dr. Chandler's report "great

28    weight," on the grounds that it was based on a thorough examination of Cherwink, his

United States District Court
Northern District of California

1    records, and observations.

2    • Dr. Frank Chen, M.D.  AR at 33–34.  Dr. Chen did an internal medicine consultation

3      for Cherwink at the Social Security Administration's request.  The ALJ commented

4      that the physical examination was "unremarkable."  Dr. Chen diagnosed Cherwink

5      with chronic back pain and other ailments, and "opined the claimant had no functional

6      limitations on a medical basis."  *Id.* at 33 (citing AR Ex. 11F).  The ALJ gave Dr.

7      Chen's opinion, '"some, but reduced, weight," as the ALJ found it consistent with the

8      evidence in the record but inconsistent with Cherwink's self-reported physical

9      limitations.

10   • H. Pham, M.D.  AR at 34.  Dr. Pham performed a physical residual functional capacity

11     assessment of Cherwink based on review of the evidence.  Dr. Pham diagnosed

12     Cherwink with disorders of the back, but also opined that Cherwink could lift or carry

13     25 pounds frequently, and 50 pounds occasionally.  Dr. Pham additionally opined that

14     Cherwink could sit, stand, or walk with normal breaks for about six hours of an eight-

15     hour workday.  The ALJ gave Dr. Pham's assessment partial weight, as it was

16     consistent with evidence in the record, but inconsistent with Cherwink's self-reported

17     exertional limitations at the hearing.

18   • Dan Sands, Ph.D.  AR at 34–35.  Dr. Sands generated several opinions through the

19     course of Cherwink's treatment.  The opinions, as described by the ALJ, vary

20     considerably, including a recommendation to "remain off work" for a period, a

21     statement that Cherwink could go back to work soon, a statement encouraging

22     Cherwink to apply for benefits, and opining several times that Cherwink was incapable

23     of working full time.  The ALJ gave Dr. Sands' opinions little weight, as the opinions

24     are "vague, imprecise, broad, and/or temporary assessments of [Cherwink's] ability to

25     work."  *Id.* at 34.  The ALJ found Dr. Sands' treatment notes to be inconsistent with his

26     conclusions about Cherwink's ability to return to work; Dr. Sands encouraged

27     Cherwink to engage in more activities with others and did not advise more intense

28     treatment.  The ALJ also gives little weight to Dr. Sands' conclusions as they did not

United States District Court
Northern District of California

10

consider all the evidence, and go to the ultimate issue of ability to work, rather than to a medical issue regarding the nature and severity of a diagnosed impairment.  Dr. Sands also submitted a Mental Residual Functional Capacity Questionnaire, and gave Cherwink a GAF of 60.  The ALJ gave Dr. Sands' RFC questionnaire "very little weight," finding it inconsistent with Dr. Sands "own contemporaneous treatment notes," and are also internally inconsistent.

- Dr. Donald Martin, M.D.  AR at 35.  Dr. Martin generated a Manipulative Limitations Residual Functional Capacity Questionnaire, and opined regarding Cherwink's ability to grasp, turn, and twist objects with his hands.  The ALJ gave Dr. Martin's opinion "reduced weight," finding it vague and imprecise, and also not stating medical bases for its conclusions.  The ALJ also notes that at least one note in the margin of the report appears to be written by Cherwink himself, raising questions about the validity about the rest of the report.

Having determined that Cherwink would have a residual functional capacity to perform semi-skilled light work, the ALJ next considered whether Cherwink would be able to return to his past relevant work.  The ALJ determined that if Cherwink "stopped the substance abuse, [he] would continue to be unable to perform past relevant work."  AR at 36.  Cherwink's "past relevant work as a graphic designer (DOT 141.061-018) . . . is sedentary skilled work with an SVP of 7," AR at 26, which is greater than the ALJ's determination of Cherwink's RFC (light work but limited to an SVP of 4 or below).  *Id.* at 28.

### E.    Step 5: Ability to Perform Other Jobs in the National Economy

Having found that that Cherwink did not have the RFC to return to his previous work, whether or not he stopped his substance abuse, the ALJ next considered whether Cherwink could perform other jobs in the national economy.  As a preliminary sub-issue, the ALJ first stated that Cherwink's "acquired job skills do not transfer to other occupations within the residential functional capacity defined above," *id.* at 26 (referring to analysis of Cherwink's RFC *without* stopping substance abuse); and that "[t]ransferability of job skills is not material to the determination of disability because" under the Medical-Vocational Guidelines, Cherwink "is 'not

United States District Court
Northern District of California

United States District Court
Northern District of California

1    disabled' whether or not the claimant has transferable job skills." *Id.* at 36 (referring to

2    Cherwink's RFC if he stopped the substance abuse).

3         With regard to all of Cherwink's impairments, "including the substance abuse disorder,"

4    the ALJ concluded that "there are no jobs that exist in significant number in the national economy

5    that [Cherwink] can perform." *Id.* at 26.

6         With regard to all of Cherwink's remaining impairments if he "stopped the substance

7    abuse," the ALJ had previously concluded that Cherwink "would not have the residential

8    functional capacity to perform the full range of light work," and the ALJ therefore considered the

9    testimony of the vocational expert to "determine the extent of the erosion of the unskilled light

10   occupational base caused by the limitations that would remain." *Id.* at 36.  The ALJ

11              asked the vocational expert whether jobs exist in the national
12              economy for an individual with [Cherwink's] age, work experience,
                and the residential functional capacity [Cherwink] would have if he
13              stopped substance abuse.  The vocational expert testified that given
                all the factors [Cherwink] would be able to perform the
14              requirements of the following representative occupations: data entry
                clerk (DOT 203.582-054) which is sedentary semi-skilled work with
15              an SVP of 4 with 420 jobs in the Region, 22,688 jobs in the State of
                California, and 189,783 jobs in the Nation; and telemarketer (DOT
16              299.357-014) which is sedentary semi-skilled work with an SVP of
17              4 with 210 jobs in the Region, 28,619 jobs in the State of California,
                and 340,354 jobs in the Nation.

18   *Id.*

19        The ALJ concluded that, "based on the vocational expert's testimony," Cherwink would be

20   capable of making a successful adjustment to work that exists in significant numbers in the

21   national economy." *Id.* at 37.  The ALJ further referenced the vocational expert's testimony,

22   stating that "the vocational expert testified to basic computer skills being transferable to the jobs

23   named above from his past relevant work." *Id.*  The ALJ additionally stated that

24   "[n]otwithstanding these semi-skilled jobs noted above, it is also noted that at the onset, the world

25   of work at the unskilled light level remains an option at step five of the sequential evaluation," and

26   that "[a]ccordingly, a finding of 'not disabled' is therefore appropriate under the framework of

27   202.14." *Id.*

28

## IV.    MOTIONS FOR SUMMARY JUDGMENT

### A.    Cherwink's Motion for Summary Judgment

Cherwink filed a complaint seeking review of the ALJ decision by this Court, and moved for summary judgment on the grounds that the ALJ erred at Step 5, and that the ALJ's statements and findings were not based on substantial evidence or free of material legal error.  Dkt. No. 16 ("MSJ") at 4.  Cherwink does not specifically contest any of the ALJ's determinations as to Cherwink's impairments when including substance abuse.  Cherwink also does not directly or explicitly contest the ALJ's determinations as to steps 1–4 without substance abuse.  Cherwink advances his arguments under two headings: (1) "the vocational advisor's testimony does not support the ALJ's determination at Step 5;" and (2) "the 'computer skills' are not transferable skills as defined by the regulations."  MSJ at 4, 9.

#### 1.  The vocational advisor's testimony does not support the ALJ's determination at Step 5

Cherwink argues the ALJ's determination is not supported by substantial evidence, and therefore a finding of disability is warranted, because "even if he has transferrable skills from the graphic design industry, the ALJ failed to inquire as to the vocational adjustment required."  MSJ at 4–5.  Cherwink first notes that after step 4, the burden shifts to the Commissioner to establish that there are jobs in the national economy that Cherwink could perform.  *Id.* at 5.

Cherwink argues that "transferability of skills . . . is the deciding factor"—that is, dispositive—in correctly determining Cherwink's disabled status.  *Id.* at 5.  Cherwink contrasts this with the ALJ's statement that transferability of skills "is not material to determination of disability."  AR at 36.  Cherwink argues that given his age and past skilled work, whether his skills are transferable is dispositive under the Medical-Vocational Guidelines (the "Grids") for either sedentary or light work.  *See* MSJ at 5.  Cherwink argues that his skills are not transferrable, and therefore that Cherwink is disabled under the Grids.  *Id.*

Cherwink next argues that under *Distasio v. Shalala*, the sedentary Grid rules apply, whereas the ALJ used the light work rules.  *See id.* at 6; 47 F.3d 348 (9th Cir. 1995).  Under the sedentary grid rules, Cherwink implies, transferability of skills is dispositive; and because Cherwink's skills are not transferable, a finding of disability should be entered.

Cherwink next argues that "at the sedentary exertional level, because Mr. Cherwink is over the age of 50," the ALJ should have applied a heightened standard for transferability of skills, but did not.  MSJ at 6–7.  Cherwink cites 20 C.F.R. § 404.1568(d)(4):

> . . . If you are of advanced age and you have a severe impairment(s) that limits you to no more than sedentary work, we will find that you have skills that are transferable to skilled or semiskilled sedentary work only if the sedentary work is so similar to your previous work that you would need to make very little, if any, vocational adjustment in terms of tools, work processes, work settings, or the industry. (See§ 404.1567(a) and § 201.00(f) of appendix 2.)

MSJ at 7.  Cherwink argues that the "vocational advisor's testimony states exactly the opposite"—*i.e.*, "that Mr. Cherwink's [past] graphic design skills would not transfer to any other design type of job and to do so would be 'extremely difficult.'"  *Id.* (citing AR at 79).

Cherwink concludes that he is "entitled to a finding of disability pursuant to sedentary grid rule 20 C.F.R. Pt. 404, Subpt. P, App. 2, Rules 201.14," and that the "ALJ has failed to carry the Administration's burden warranting reversal and remand for the payment of benefits."  *Id.* at 9.

### 2. The "computer skills" are not transferable skills as defined by the regulations

Cherwink's second argument is that his "computer skills," as described by the ALJ and the vocational expert, are not "transferable skills" as defined by 20 C.F.R. § 404.1568, which states:

> (d) Skills that can be used in other work (transferability)--
>
> (1) What we mean by transferable skills. We consider you to have skills that can be used in other jobs, when the skilled or semi-skilled work activities you did in past work can be used to meet the requirements of skilled or semi-skilled work activities of other jobs or kinds of work. This depends largely on the similarity of occupationally significant work activities among different jobs.

20 C.F.R. § 404.1568.  Cherwink acknowledges that he has acquired certain skills, but argues that "neither the record nor the [] administratively noticed data support that [] Cherwink has skills which would allow him to 'meet the demands' of the positions named by the ALJ."  *Id.* at 10.  Cherwink further argues that under *Bray v. Comm'r of Soc. Sec. Admin.*, "[r]eversal is warranted because the ALJ has failed to establish that Mr. Cherwink has acquired transferable work skills from past employment without expressly explaining in the decision what those acquired skills are

14

and how they cause Mr. Cherwink to be able to meet the demands of other work or have some advantage in doing so."  MSJ at 12 (citing 554 F.3d 1219, 1223–25 (9th Cir.2009)).

Cherwink argues that "[t]he ALJ's determination that Mr. Cherwink can perform other SVP 4 tasks fails to carry the Administration burden of finding that Mr. Cherwink possesses skills which would 'transfer' to and cause him to 'meet the requirements' of another occupation AND have little to no vocational adjustment after performing a single job for almost 30 years."  MSJ at 12.  Therefore, Cherwink argues, "reversal and remand are warranted because the ALJ's determination is not supported by substantial evidence and is in violation of the regulations."  *Id.*

## B.   Defendant's motion for summary judgment and opposition to Cherwink's motion for summary judgment

Defendant disputes Cherwink's claims and argues that the Commissioner's determinations at Step 5 were not in error, and were supported by substantial evidence.  Defendant offers discrete arguments not grouped under any headings, as stated below.

Defendant argues that Cherwink was correctly determined to have a residual functional capacity that included his ability to perform "a full range of light work that involves no more than semi-skilled SVP 4 tasks."  Dkt. No. 20 ("Opp.") at 2.  Defendant argues that Cherwink "is not challenging the ALJ's RFC finding" that Cherwink is capable of light work.  *Id.* at 2–3.

Defendant characterizes Cherwink's position being that his "sole argument is that he does not have transferable skills from the graphics industry, and under the medical-vocational guidelines (Grids) for sedentary work, he is disabled."  *Id.* at 3.  Defendant disputes Cherwink's argument regarding the materiality of transferability, arguing "The ALJ merely additionally noted that whether Plaintiff has transferable skills was not material under the medical vocational guidelines" and that "[b]oth rules show Plaintiff as not disabled."  *Id.*

Defendant additionally argues that "Plaintiff cites the wrong Grid rules."  *Id.* at 4.  Disputing Cherwink's citation to Rule 202.07, Defendant argues that "if the ALJ considered Plaintiff to be of an advanced age, Rule 202.08 would be more applicable."  Defendant argues that Cherwink's education "prepared him for his work in the graphics field where he acquired extensive computer skills," and that "these skills provided direct entry into other skilled jobs."  *Id.*

United States District Court
Northern District of California

at 5.  Defendant also argues that Cherwink's citations to "201.14, and 201.15 (sedentary work) are inapplicable as the ALJ found Plaintiff capable of light work." *Id.*

Defendant disputes the importance of the vocational expert's identification of only jobs that were sedentary, rather than addressing light exertional level jobs, arguing that "[a] reasonable inference is that after discussing Plaintiff's past work, which was sedentary, and the ALJ's detailed and extensive discussion regarding the reduced skill level from SVP 7 to SVP 4, and transferability of those skills, the VE assumed the ALJ was looking at a sedentary exertional level, like Plaintiffs past relevant work." *Id.* Defendant claims that the vocational expert's failure to identify jobs at a light exertional level with no more than an SVP of 4 was "harmless error," and states that "[a] reasonable assumption is that if there was sedentary work at a SVP 4 level, there would also be light work at an SVP level." *Id.* at 5.

Defendant next distinguishes *Distasio* from the instant facts.  First, Defendant argues that in *Distasio*, there was a question as to whether the plaintiff's exertional and non-exertional limitations limited him to sedentary work, as opposed to light work.  Here, Defendant argues "the ALJ found [Cherwink] capable of a full range of light [work], which means the ALJ could rely solely on the light Grid Rule 202.14, without [vocational expert] testimony." *Id.* at 5–6.  Second, Defendant argues that in *Distasio* the vocational expert's testimony demonstrated "certainty" that the plaintiff could "only perform what she believed were sedentary jobs." *Id.* at 6 (quoting *Distasio*, 47 F.3d at 349*).*  Here, in contrast, Defendant argues that the vocational expert offered no such evidence, let alone certainty.  Opp. at 6.

Defendant concludes by emphasizing that "[if] the evidence can reasonably support either affirming or reversing the [ALJ's] conclusion, the court may not substitute its judgment for that of the [ALJ]." *Id.* (collecting cases).

## C.   Cherwink's Reply

Cherwink primarily reiterates his arguments from his opening motion.  In particular, he argues that "Mr. Cherwink has no transferrable skills and is limited to sedentary work . . . [under] 201.14." Dkt. No. 21 ("Reply") at 3.

Cherwink next disputes Defendant's citation to Rule 202.08 as a new argument outside

United States District Court
Northern District of California

"the four corners of the ALJ's determination," and also contradicted by the vocational expert's testimony. *Id.* at 4.

Cherwink emphasizes that the issue of transferability is dispositive, stating that "[i]t is the presence or lack thereof transferrable skills that determine the outcome in the sedentary grid table as well as the light table." *Id.* at 4. Cherwink also argues that "Cherwink changed age categories from approaching advanced age to advanced age as of March 19, 2012, several months prior to the ALJ's decision," and therefore even in the light work grid, lack of transferrable skills warrants a finding of disability under Rule 202.06. *Id.* Notwithstanding that argument, Cherwink reiterates that the sedentary grid rule applies under *Distasio*. *Id.* Cherwink also argues that the vocational expert's testimony regarding sedentary jobs cannot be considered "harmless error," as claimed by Defendant, because "disability is warranted under rule 202.06 when Mr. Cherwink changed age categories." *Id.*

## V.    ANALYSIS

### A.    Legal Standard Under 42 U.S.C. § 405(g)

When asked to review the Commissioner's decision, the Court takes as conclusive any findings of the Commissioner which are free from legal error and supported by "substantial evidence." 42 U.S.C. § 405(g). Substantial evidence is "such evidence as a reasonable mind might accept as adequate to support a conclusion," and it must be based on the record as a whole. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence means "more than a mere scintilla," id., but "less than a preponderance." *Desrosiers v. Sec'y of Health and Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988). Even if the Commissioner's findings are supported by substantial evidence, they should be set aside if proper legal standards were not applied when weighing the evidence and in reaching a decision. *Benitez v. Califano*, 573 F.2d 653, 655 (9th Cir. 1978). In reviewing the record, the Court must consider both the evidence that supports and detracts from the Commissioner's conclusion. *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996) (citing *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985)).

If the Court identifies defects in the administrative proceeding or the ALJ's conclusions, the Court may remand for further proceedings or for a calculation of benefits. *See Garrison v.*

United States District Court
Northern District of California

17

1    *Colvin*, 759 F.3d 995, 1019−21 (9th Cir. 2014).

2        **B.    Application of the Medical-Vocational Guidelines**

3        In some cases, it is appropriate for the ALJ to rely on the Medical–Vocational Guidelines

4    to determine whether a claimant can perform some work that exists in "significant numbers" in the

5    national economy. The Medical–Vocational Guidelines are a matrix system for handling claims

6    that involve substantially uniform levels of impairment.  *See* 20 C.F.R. pt. 404, subpt. P, app 2.

7        The Guidelines present, in table form, a short-hand method for determining the availability

8    and numbers of suitable jobs for a claimant. These tables are commonly known as "the grids." The

9    grids categorize jobs by their physical-exertional requirements and consist of three separate tables-

10   one for each category: "[m]aximum sustained work capacity limited to sedentary work,"

11   "[m]aximum sustained work capacity limited to light work," and "[m]aximum sustained work

12   capacity limited to medium work."  20 C.F.R. pt. 404, subpt. P, app. 2, rule 200.00. Each grid

13   presents various combinations of factors relevant to a claimant's ability to find work. The factors

14   in the grids are the claimant's age, education, and work experience. For each combination of these

15   factors, *e.g.,* fifty years old, limited education, and unskilled work experience, the grids direct a

16   finding of either "disabled" or "not disabled" based on the number of jobs in the national economy

17   in that category of physical-exertional requirements.  *See id.*

18       Where a claimant is able to perform the full range in a given exertional category, *e.g.* light

19   work, the corresponding grid rules apply.  *See Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir.

20   1999).  Here, the ALJ found that if Cherwink "stopped the substance abuse, [he] would *not* have

21   the residual functional capacity to perform the full range of light work."  AR at 36 (emphasis

22   added).  However, "the fact that a non-exertional limitation is alleged does not automatically

23   preclude application of the grids."  *Tackett*, 180 F.3d at 1102.  "The critical point is that the grids

24   should only be applied where a claimant's functional limitations—both exertional and non-

25   exertional—'fall into a standardized pattern accurately and completely described by the grids.'"

26   <u>*Conrad v. Astrue*</u>, No. C 08-2851 SI, 2009 WL 1948831, at *3 (N.D. Cal. July 2, 2009) (quoting

27   *Tackett*, 180 F.3d at 1103).  "*Tackett's* bar on exclusive reliance on the grids is limited by its

28   requirement that the nonexertional impairments invoked must be significant enough to limit

United States District Court
Northern District of California

18

1   further the range of work permitted by exertional limitations before precluding application of the

2   grids." *Lounsbury v. Barnhart,* 468 F.3d 1111, 1115 n.2 (9th Cir.2006).

3       Here, the ALJ determined that Cherwink had the residual functional capacity to perform

4   light work, "except that [Cherwink] is limited to work involving no more than semi-skilled SVP

5   (specific vocational preparation) 4 tasks."  AR at 28.  The ALJ subsequently described the

6   determination as being that Cherwink has "the residual functional capacity of light work with

7   cognitive limitations," and stated that "a more restrictive functional capacity [is] not persuasive or

8   supported by the evidence."  *Id.* at 36.  Where the ALJ explicitly stated that Cherwink was not

9   capable of the "full range" of light work, the ALJ subsequently summarized and relied on the

10   vocational expert's testimony regarding examples of jobs Cherwink could perform, given his age,

11   education, work experience, and residual functional capacity, including a description of the

12   exertional level and skill level of the example jobs.  *Id.*  The record indicates that the only

13   limitation identified by the ALJ preventing Cherwink from being able to perform the "full range"

14   of light work is cognitive ability, *i.e.* skill level, and not any significant non-exertional physical

15   limitations.

16       Cherwink does not advance any argument that usage of the grids was improper.[1]  The

17   determination made by the ALJ—that Cherwink has the exertional capacity to perform light work,

18   as limited by his skill level—"fall[s] into [the] standardized pattern accurately and completely

19   described by the grids."  *See Tackett*, 180 F.3d at 1103.  Skill level and transferability of skills is a

20   category accurately and completely described by the grids: it is one of the categorical factors

21   considered along with age and education.  *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 2; *see also*

22   *Conrad v. Astrue*, No. C 08-2851 SI, 2009 WL 1948831, at *3 (N.D. Cal. July 2, 2009) (rejecting

23   claimant's argument that application of the grids was improper where claimant was found to have

24   cognitive limitations including that she could not "understand, remember, or carry out detailed or

25   complex instructions" because the grids "contemplate" work at the claimant's skill level).

26       Alternately, even where a claimant's specific limitations renders use of the grids

27   _____

28   [1] Cherwink argues that the ALJ applied the wrong grid rules, *see* IV.(A), *supra*, but not that his
    physical or non-physical limitations rendered the grids generally inapplicable.

United States District Court
Northern District of California

inappropriate, the ALJ is then required to rely on testimonial evidence from a vocational expert. *See Hoopai v. Astrue,* 499 F.3d 1071, 1076 (9th Cir.2007) ("[A]vocational expert is required only when there are significant and 'sufficiently severe' non-exertional limitations not accounted for in the grid.").  The ALJ considered testimony from a vocational expert, making such a challenge to the use of the grids moot.

Accordingly, the Court proceeds to consider the determinations of the ALJ, in light of the grids and the vocational expert's testimony, to the degree they accurately and completely describe Cherwink's limitations.

### C.   Three deciding factors

The pleadings reveal three principle disagreements that control the outcome in this case: (1) whether the sedentary or light work grid rules apply; (2) whether the grid category for "Approaching advanced age" or "Advanced age" applies; and (3) whether the ALJ sufficiently showed that Cherwink had transferable skills.  The following table shows the potential outcomes.

| | APPROACHING ADVANCED AGE | ADVANCED AGE |
|---|---|---|
| **LIGHT WORK** | Transferable (202.15)<br><br>**Not disabled**<br><br>(202.14) Not transferable | Transferable (202.07)<br>**Not disabled**<br><br>(202.06) Not transferable<br>**Disabled** |
| **SEDENTARY** | Transferable (201.15)<br>**Not disabled**<br><br>(201.14) Not transferable<br>**Disabled** | Transferable (201.07)<br>**Not disabled**<br><br>(201.06) Not transferable<br>**Disabled** |

In the top-left box—in which Cherwink is evaluated using the light work grid, and considered in the "approaching advanced age" category—transferability of skills is not material. Whether or not Cherwink's skills are transferrable, the outcome under 202.14 or 202.15 is a determination that Cherwink is not disabled.  The top-left box represents Defendant's argument: that Cherwink was properly determined, at Step 4, to have a residual functional capacity of light

20

work, and fits in the "approaching advanced age" category.

The top-right and bottom-left boxes represent Cherwink's argument that transferability of skills is not just material, but dispositive: in either box, a determination that Cherwink has skills from his past work that are transferrable results in a finding of no disability, and a determination that he does not have transferable skills results in a finding of disability.

The bottom-right box would be consistent with Cherwink's separate arguments that the sedentary grid rules apply and that Cherwink reached "advanced age" as of March 19, 2012, if Cherwink made those arguments together; however, Cherwink never argues those two positions apply in combination, and never argues that Rule 201.06 or 201.07 should apply.

## D.     Five-Step Analysis

### 1.   Cherwink does not challenge the ALJ's decision at steps 1–3, or the ALJ's determination regarding Cherwink's alcohol abuse

Cherwink does not argue in his MSJ or Reply that the ALJ made a legal error or determination without the support of substantial evidence as to steps 1–3 of the five-step analysis. He also does not make any argument regarding the ALJ's determinations as to Cherwink's abuse of alcohol.  Accordingly, the Court moves on to consider the ALJ's determination at step 4.

### 2.   The ALJ's step 4 determination as to Cherwink's residual functional capacity was supported by substantial evidence

The Court finds that the ALJ's determination that if Cherwink stopped his substance abuse, he would have the residual functional capacity to perform light work, limited to SVP 4 tasks, AR at 36, was supported by substantial evidence.

Cherwink only indirectly disputes the sufficiency of the ALJ's determination, phrasing his arguments in his motion for summary judgment and the reply as arguments regarding the Step 5 determinations. *See, e.g.,* MSJ at 4, 9.  Determination of a claimant's residual functional capacity, however, is considered at step 4 of the five-step process. *See* 20 C.F.R. § 404.1520(a)(4)(iv) ("At the fourth step, we consider our assessment of your residual functional capacity . . . .").  The ALJ's determination of Cherwink's residual functional capacity included analysis of Cherwink's written personal statements, his daughter's written personal statement, Cherwink's hearing testimony, and

United States District Court
Northern District of California

1   the medical records, reports, and treatment notes of five doctors who treated or examined

2   Cherwink.  *See supra*.  The ALJ considered the credibility of each source of evidence and made an

3   individualized determination as to the proper weight afforded to each, based on its internal and

4   external consistency and level of detail.  *See id.*  Cherwink does not challenge the sufficiency of

5   any of that evidence, despite the principle that the burden of persuasion does not shift from

6   Cherwink to the Commissioner until step 5.  *See, e.g.*, *Pinto v. Massanari*, 249 F.3d 840, 844 (9th

7   Cir. 2001) ("the burden of proof lies with the claimant at step four").

8          Cherwink's sole basis to challenge the determination that the light work grid applies is the

9   argument that under *Distasio*, the ALJ had to account for the discrepancy between the

10   determination that Cherwink had the residual functional capacity for light work and the vocational

11   expert's two examples of jobs both being sedentary.  The comparison is inapt.  In *Distasio*, the

12   vocational expert explicitly testified that Distasio could "only perform what she believed were

13   sedentary jobs." *Distasio v. Shalala*, 47 F.3d at 349.  The vocational expert here offered no such

14   testimony.  Contrary to Cherwink's argument, the vocational expert's testimony did not

15   "establish[], at best, [Cherwink] could perform jobs that fell within the sedentary category."

16   Reply at 5; *see* AR at 76–82.  The vocational expert did not indicate how or to what degree

17   Cherwink's impairments limited his search for occupational titles, and the vocational expert gave

18   no indication that he believed, based on his own analysis, that Cherwink should be categorized as

19   sedentary.  *See* AR at 76–82.  The vocational expert's testimony did not undermine the substantial

20   medical and testimonial evidence that was the proper basis for the ALJ's determination as to

21   Cherwink's residual functional capacity to perform light work.

22          Accordingly, the Court finds that there was substantial evidence to support the ALJ's

23   determination that Cherwink had a residual functional capacity for light work, and that therefore

24   the light work grid rules (202.–) properly apply.

25          **3.   The ALJ's step 5 determination as to Cherwink's age was not supported by**
26          **substantial evidence; Cherwink was of "advanced age" as of March 19, 2012**

27          Having determined that the light work grid rules apply, the Court next considers whether

28   Cherwink should have been considered under the grid rules for "approaching advanced age" or

"advanced age." This determination, again, could be dispositive: if the "approaching advanced age" grid applies, then Cherwink is not disabled whether or not his past work skills are transferrable.

| Rule | Age | Education | Previous Work Experience | Decision |
|------|-----|-----------|--------------------------|----------|
| 202.14 | Closely approaching advanced age | High school graduate or more | Skilled or semiskilled-skills not transferable | Not disabled |
| 202.15 | Closely approaching advanced age | High school graduate or more | Skilled or semiskilled-skills transferable | Not disabled |

20 C.F.R. § Pt. 220, App. 2. If the "advanced age" grid applies, then a finding of disability turns on the question of transferability.

| Rule | Age | Education | Previous Work Experience | Decision |
|------|-----|-----------|--------------------------|----------|
| 202.06 | Advanced Age | High school graduate or more- does not provide for direct entry into skilled work | Skilled or semiskilled-skills not transferable | Disabled |
| 202.07 | Advanced Age | High school graduate or more- does not provide for direct entry into skilled work | Skilled or semiskilled-skills transferable | Not disabled |

*Id.*

  Cherwink makes indirect arguments as to age category in his opening brief, arguing that grid rule 201.14 applies, MSJ at 4–5, 9, 13, and arguing that the transferability guidelines for "advanced age" apply. *Id.* at 6–7 (citing 20 C.F.R. § 404.1568(d)(4) ("Transferability of skills for persons of advanced age")). However, Cherwink cites to the "advanced age" grid rules in the context of his argument that the advanced age rules of the *sedentary grid* apply. Grid rule 201.14 is a rule for claimants with residual functional capacity limited to sedentary work, and Cherwink advances his claim regarding transferability only in the context of arguments regarding "the sedentary exertional level." MSJ at 6. In quoting 20 C.F.R. § 404.1568(d)(4), Cherwink skips the portion of that paragraph that discusses "severe impairment(s) that limits you to sedentary or light work," and quotes only the portion that discusses "a severe impairment(s) that limits you to no

United States District Court
Northern District of California

more than sedentary work." MSJ at 6–7; 20 C.F.R. § 404.1568(d)(4).[2]  Cherwink does not

directly cite to grid rules 202.14 or 202.15 (approaching advanced age and light work residual

functional capacity) in his opening brief.  He does cite to 202.06 in the context of arguing that

transferability "is the deciding factor in Mr. Cherwink's disability," MSJ at 5, but goes on to say

that transferability is key "at the age of 50." *Id.*  Critically, though, Cherwink then argues that "if

Mr. Cherwink's skills are 'not transferrable' and enough to meet the demands of other skilled

work at the sedentary *or light ranges of work* find Mr. Cherwink disabled" [sic].  *Id.* (citing "Rules

202.06 and 201.14 *as of 55 and 50*, respectively") (emphasis added).

In her Opposition, the Commissioner makes only one direct rebuttal regarding Cherwink's

age.  In the context of claiming that Cherwink "cites the wrong Grid rules," Opp. at 4, the

Commissioner argues that

> Arguably, if the ALJ considered Plaintiff to be of an advanced age,
> Rule 202.08 would be more applicable given Plaintiff's extensive
> education and acquired computer skills (i.e.) high school graduate or
> more-provides for direct entry into skilled work and skills not
> transferable – Not Disabled. . . . [T]he skills he acquired through his
> education allowed him direct entry into skilled work. See 202.00(c),
> footnote to 202.08.  Plaintiff's past education prepared him for his
> work in the graphics field where he acquired extensive computer
> skills. These skills provided direct entry into other skilled jobs. This
> is different from having transferable skills referenced in the third
> column of the Grids.

*Id.*  Grid rule 202.08 provides:

| Rule | Age | Education | Previous Work Experience | Decision |
|------|-----|-----------|--------------------------|----------|
| 202.08 | Advanced Age | High school graduate or more- provides for direct entry into skilled work | Skilled or semiskilled- skills not transferable | Not disabled |

---

[2] Cherwink states in this section of his opening brief that "at the sedentary exertional level,
because Mr. Cherwink is over the *age of 50*, the ALJ had a duty to establish that the work is 'so
similar to [his] previous work that [he] would need to make very little, if any vocational
adjustment.'" MSJ at 6 (emphasis added) (quoting 20 C.F.R. § 404.1568(d)(4)).  The Court
assumes Cherwink intended to argue that § 404.1568(d)(4) applied on the basis of Cherwink being
over the age of 55, as the statute actually requires.

24

United States District Court
Northern District of California

20 C.F.R. § Pt. 220, App. 2.  The Commissioner's only other reference to Cherwink's age is in the Opposition's Statement of Facts, in which she states that Cherwink "was born in March 1957, and is an individual closely approaching advanced age." *Id.* at 1.

Cherwink more directly addresses the issue of which age category applies in his Reply, stating that "Mr. Cherwink changed age categories from approaching advanced age to advanced age as of March 19, 2012, several months prior to the ALJ's decision." Reply at 4.  In the context of arguing that "the presence or lack of transferrable skills is the critical factor" Cherwink argues that with regard to "the period after March 19, 2012," "at advanced age (55) with no transferrable skills as found by the ALJ, a finding of disability is warranted." *Id.*  Cherwink cites to, *inter alia*, grid rules 202.06 and 202.07, indicating that the determination of disability should be made between those two rules, with transferability of skills being the dispositive factor that Cherwink says warrants a finding of disability under 202.06.  *Id.*

The age of a disability claimant "is to be determined at the time of the Secretary's final decision." *Madrigal v. Sullivan*, 777 F. Supp. 1503, 1506 (N.D. Cal. 1991) (citing *Russell v. Bowen,* 856 F.2d 81, 83–84 (9th Cir.1988)).  "When the Appeals–Council denies review . . . the Secretary's final decision is the underlying decision of the ALJ." *Madrigal*, 777 F. Supp. at 1506 (citing 20 C.F.R. § 404.981); *see Russell v. Bowen*, 856 F.2d 81, 83–84 (9th Cir. 1988) (considering the age of Petitioner claimant at the date of the ALJ's decision); *Woods v. Chater*, No. C 95-1748 SI, 1996 WL 570490, at *4 (N.D. Cal. Sept. 27, 1996) (considering "borderline" cases of age category with regard to the date of the ALJ's decision).  Here, Cherwink applied for benefits on January 19, 2011 (age 53) and was initially denied on June 11, 2011 (age 54).  At the time of hearing (October 12, 2012) and the ALJ's final decision (November 13, 2012), Cherwink was 55, definitively falling into the "advanced age" category.

Cherwink argues that, if the sedentary grid applies, and if Cherwink is found to be of advanced age, either 202.06 or 202.07 controls.  Reply at 4.  The Commissioner contends that "202.08 would be more applicable" on the basis that it applies to claimants with an educational level determined to be, "High school graduate or more-provides for direct entry into skilled work." Opp. at 4; 202.08.  Cherwink correctly notes that the ALJ did not make such a finding, and that the

25

Court "cannot entertain any post hoc reasons" for the ALJ's decision that were not included in the decision, and that "the ALJ's rationale must adequately explain how a conclusion was reached within the four corners of the determination." Reply at 4 (citations omitted).   On that basis, the Court rejects the Commissioner's argument as one without basis in the ALJ's decision.  "We review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014).

The Court additionally, and in the alternative, rejects the Commissioner's argument regarding 202.08 on the merits.  The Commissioner cites to 202.00(c) (which is referenced in footnote two to grid rule 202.08), which states in part that "even a high school education or more which was completed in the remote past will have little positive impact on effecting a vocational adjustment unless relevant work experience reflects use of such education." Opp. at 4; 20 C.F.R. § Pt. 404, Subpt. P, App. 2, 202.00(c).  The Commissioner argues that

> the skills [Cherwink] acquired through his education allowed him direct entry into skilled work. Plaintiff's past education prepared him for his work in the graphics field where he acquired extensive computer skills. These skills provided direct entry into other skilled jobs. This is different from having transferable skills referenced in the third column of the Grids.

Opp. at 4 (citation removed).  However, the Commissioner offers no factual or evidentiary basis for her implicit claim that Cherwink's "relevant work experience reflects use of [his] education." At the hearing, the ALJ asked only one question and received one answer regarding Cherwink's education, AR at 49 ("And the highest level of education you've received?" "I have a college education, two BAs"), and made no connection between Cherwink's education and the skilled work he did as a graphic designer.  There is no evidence in the record, cited by the Commissioner or otherwise found by the Court, that indicates Cherwink's education "provides for direct entry into skilled work," and therefore 202.08 is not the appropriate Grid rule to apply.

### 4. The ALJ's step 5 determination as to the transferability of Cherwink's skills is not supported by substantial evidence

With a residual functional capacity to perform light work and being in the advanced age

category, Cherwink's claim for disability therefore turns on whether his skills from past work are transferrable:

| Rule | Age | Education | Previous Work Experience | Decision |
|------|-----|-----------|--------------------------|----------|
| 202.06 | Advanced Age | High school graduate or more- does not provide for direct entry into skilled work | Skilled or semiskilled- skills not transferable | *Disabled* |
| 202.07 | Advanced Age | High school graduate or more- does not provide for direct entry into skilled work | Skilled or semiskilled- skills transferable | *Not disabled* |

*Compare* 202.06, 202.07; *see* Section V.(B), *supra* (top-right box)

> a.   The arguments

Cherwink argues that the ALJ did not carry his burden to establish that Cherwink's past skills were transferable to the jobs testified to by the vocational expert.  *E.g.* MSJ at 11–12; Reply at 4–5.  It is not clear that the Commissioner even opposes this position.  The Opposition's Statement of Facts summarizes the vocational expert's testimony as stating that Cherwink "would have no transferable skills from his work as a graphic designer to these semi-skilled levels because it would be difficult to go down (from a skilled level) to a semi-skilled level and still do graphics work."  Opp. at 2 (AR citations omitted).  The Commissioner also directly states in the argument section that "the ALJ found Plaintiff did not have transferable skills."  *Id.* at 3.  However, the Commissioner did also state in the Opposition that Cherwink "did have computer skills, which would generally transfer into other skilled and semi-skilled work."  Opp. at 2 (citing AR at 78).

> b.   The test

Assuming the Commissioner opposes Cherwink's argument, the relevant test is whether the ALJ made findings of fact regarding the transferability of Cherwink's skills and included them in the ALJ's decision.  "When the issue of skills and their transferability must be decided, the adjudicator or ALJ is required to make certain findings of fact and include them in the written decision. Findings should be supported with appropriate documentation."  Titles II & XVI: Work Skills & Their Transferability As Intended by the Expanded Vocational Factors Regulations

Effective Feb. 26, 1979, SSR 82–41 (S.S.A. 1982), 1982 WL 31389, at *7.  "When a finding is made that a claimant has transferable skills, the acquired work skills must be identified, and specific occupations to which the acquired work skills are transferable must be cited in the State agency's determination or ALJ's decision."  *Id.*

c.   The ALJ's decision and the vocational expert's testimony

The ALJ's decision explicitly states that "transferability of job skills is not material to the determination of disability."  AR at 36.  The sequence of findings in the decision is such that this statement by the ALJ, regarding the non-materiality of transferability (with respect to Cherwink's skills assuming he stops his substance abuse), parallels the ALJ's earlier finding that Cherwink's "acquired job skills do not transfer to other occupations within the residual functional capacity" (without assuming he stops the substance abuse).  AR at 26.  The fact that the ALJ made an explicit finding of non-transferability with continued substance abuse, but made no explicit finding—and in fact explicitly claimed transferability was not material—*with* no continued substance abuse, strongly undermines any claim that the ALJ made a conclusion, supported by substantial evidence, that Cherwink has transferrable skills.

Notwithstanding the statement of non-materiality, the ALJ also stated that "the vocational expert testified to basic computer skills being transferrable to the jobs named from [Cherwink's] past relevant work."  *Id.* at 37.  That testimony by the vocational expert suggesting transferability primarily included the following exchange:

Q: Are there any transferrable skills down to something that is less or in the semiskilled, in the 3, 4, 5 range for someone who has these kinds of skills?

A: Well, Your Honor, the DOT lists some transferrable as styling and layout and then also, of course, there's the obvious transferrable skills of computer applications.

Q: Um-hum.

A: So there would be some use for the computer applications into the semiskilled range of the SVPs.

AR at 78.  When the ALJ subsequently asked for "some examples of jobs," there was brief

confusion as the vocation expert was looking at "the wrong document." *Id.*  The ALJ then clarified his question, saying, "Whenever I talk about transferability, someone who's had a skilled job in the graphics . . . area, I would assume it would be transferrable to a similar graphics department, right?" *Id.*  The vocational expert then explained that Cherwink's past skills as a graphics designer would *not* be transferrable to a lower-level graphics designer job, and briefly reiterates the point about computer skills:

> A: So as far as utilizing the graphic skills like styling or layout --
>
> Q: Um-hum.
>
> A: No, Your Honor. You're going to --
>
> Q: They remain in the skilled?
>
> A: Yes, that is correct.  Yes.
>
> Q: Okay. So it's the computer application that's --
>
> A: Exactly.

*Id.* at 79.  The vocational expert subsequently testified regarding the position of data-entry clerk, responding to the ALJ's questions comparing that position to Cherwink's previous graphics designer position.  *Id.*  The vocational expert testified that the data-entry clerk position is sedentary with an SVP of 4.  *Id.*  The vocational expert also testified as to the number of positions in California and in the national economy, *id.*, and that the graphic designer position and the data-entry clerk had similar manipulative requirements in terms of "reaching and handling," "fingering," and "feel."  *Id.* at 79–80.  The ALJ next asked whether there would be "any transferability using any of the skills acquired as a graphic designer to a job that is semiskilled and also is not more than frequent in terms of manipulative requirements," to which the vocational expert responded, "no, not as a designer."  *Id.* at 80.  The vocational expert further emphasized that that graphics designer skills would not transfer to another designer job "[b]ecause the design work now is so computerized."  *Id.* at 80–81.  The ALJ did not ask about transferability of other computer skills or computer applications, and the vocational expert offered no testimony as to the computer skills or computer applications of a data-entry clerk.  *Id.*

1    The vocational expert next testified about the position of telemarketer, again testifying

2  regarding the exertional level, SVP, and the "reaching and handling," "fingering," and "feeling"

3  requirements.  *Id.* at 81.  The vocational expert also testified as to the numerosity of telemarketer

4  positions in California and in the national economy.  The ALJ did not ask about transferability of

5  other computer skills or computer applications, and the vocational expert offered no testimony as

6  to the computer skills or computer applications of a telemarketer.

7         d.    Analysis

8    Skills will be considered transferable "when the skilled or semi-skilled work activities you

9  did in past work can be used to meet the requirements of skilled or semi-skilled work activities of

10  other jobs . . . ." 20 C.F.R. § 404.1568(d)(1).  A finding of transferability is most probable among

11  jobs that involve: (1) the same or lesser degree of skill; (2) a similarity of tools; and (3) a

12  similarity of services or products.  *Id.* § 404.1568(d)(2). Complete similarity of skills, however, is

13  not necessary.  *Id.* § 404.1568(d)(3).

14    The ALJ's mere recital of the vocational expert's claim that Cherwink has "computer

15  skills" does not establish activities that Cherwink did in his past job that can be used to meet the

16  requirements of skilled or semi-skilled work activities of other jobs, and is insufficient to show

17  transferability.  *See Castellucci v. Colvin*, No. C13-04450 LB, 2014 WL 4371424, at *22 (N.D.

18  Cal. Sept. 3, 2014) (remanding for award of benefits in part based on insufficient description of

19  "computer skills" of claimant and their applicability to the jobs identified by the vocational

20  expert).  Neither the ALJ's decision nor the vocational expert's testimony establish how or to what

21  degree Cherwink developed his "computer skills," what specifically those skills allow him to do,

22  or how they would apply to the proposed jobs as a data entry clerk or telemarketer.  *See id.* (where

23  the vocational expert's "one-sentence testimony regarding the [proposed job claimant would

24  allegedly be able to do] fail[ed] to mention or compare any tools, raw materials, products, process,

25  or services involved" it "render[ed] [the]decision unsupported by substantial evidence").  The

26  ALJ, relying on the vocational expert's opinion, did not identify the tools, materials, products,

27  processes, or services involved in Cherwik's past work—other than graphic design applications

28  determined to be highly specific that job and *not* transferable, as well as "computer applications"

United States District Court
Northern District of California

30

generally.  AR at 78–81.  When actually comparing the positions of data-entry clerk and telemarketer to the position of graphic designer, the ALJ asked about exertional level, SVP number, and manipulative requirements, but did not ask about the transferability of skills from graphic design to either job.  Accordingly, the Court finds that the ALJ's finding that Cherwink had "computer skills" that would transfer to the jobs specified to not be supported by substantial evidence.

## VI.    REMEDY

If the Court identifies defects in the administrative proceeding or the ALJ's conclusions, the Court may remand for further proceedings or for a calculation of benefits. *See Garrison v. Colvin*, 759 F.3d 995, 1019−21 (9th Cir. 2014).  "Remand for further administrative proceedings is appropriate if enhancement of the record would be useful. Conversely, where the record has been developed fully and further administrative proceedings would serve no useful purpose, the district court should remand for an immediate award of benefits."  *Benecke v. Barnhart*, 379 F.3d 587 (9th Cir. 2004).

Here, further enhancement of the record would be useful to establish whether Cherwink possesses skills acquired from his past work that are transferable to the light work exertional level, SVP, and age category determined by the ALJ.  *See, e.g.*, *Carter v. Barnhart*, No. C03-1518 CRB, 2003 WL 22749253, at *6 (N.D. Cal. Nov. 14, 2003) (remand for determination of transferability where such determination would result in one of two grid placements, such that the determination would be dispositive as to the awarding of benefits).  The matter is therefore remanded for determination of the transferability of the skills Cherwink performed in his past work to skilled or semiskilled jobs available to him in the national economy.

## VII.    CONCLUSION

For the foregoing reasons, plaintiff's motion for summary judgment is GRANTED in part, the defendant's cross-motion for summary judgment is DENIED in part, and the matter is remanded for further consideration consistent with this order.

**IT IS SO ORDERED.**

Dated: December 8, 2014.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

_____
JOSEPH C. SPERO
United States Magistrate Judge